The bill then charged that Helme, instead of satisfying the judgment of $1,491.33, which the plaintiff had confessed, by applying the amount of it to the sum thus paid as his surety, had assigned the judgment to the defendants Washington and Thompson, who were (152) copartners, in payment of a debt due them, and that they, in the name of Helme, had issued an execution thereon, and were about to raise its amount from the assets in the hands of the plaintiff.
The prayer of the bill was for an injunction and a discovery.
All the defendants answered, and proofs were taken, but the case made by the will was not materially varied. It appeared from the answer of the defendants Washington and Thompson that the assignment was made by Helme to them on 2 June, 1826, which was before the payment of the $4,877.87 by the plaintiff.
The equity of the plaintiff arises from the insolvency of Helme. The right of the latter to assign the judgment was lost when he became unable to exonerate the plaintiff from the thraldom in which he was placed on account of the suretyship — when Helme became unable to reciprocate the act which he required Williams to perform. I do not know a plainer equity; indeed, it was admitted in the argument that if Williams had, before the assignment, actually suffered, he would be entitled to the relief which he asks. Or if he had, before the assignment, applied to this Court to restrain Helme from transferring, that then the assignment would not avail, as it would have been made in violation of an order of the Court. Williams has other equities besides those arising from actual sufferings. As a surety, he has a right to have his fears and apprehensions quieted, to be made safe from apprehended harm. He need not wait till he has suffered, because his equity arises before that time; and this seems to be admitted in that part of the argument which rather concedes that he might have obtained an order that Helme should not assign. And as to the position that Williams should have applied to a court of equity to restrain Helme from transferring. I think that his equity is higher than any which could arise from the violation of orders or rules of court. It is independent of them; it arises from the principle first mentioned, that Helme could neither by himself nor by another require of Williams to do what he (Helme) was (160) unable to do towards him, from the fact of his insolvency. Williams being indebted to him, was also bound for him in a very large sum, from which he sustained a loss of double the amount of the sum which Williams owed. The debt which the plaintiff owed should have been left in his hands as an indemnity in part for his loss. It is true that if the judgment had been of a negotiable character, it would have been proper to have applied to a court to restrain its negotiation; for had it been of that character, Williams might have had a legal owner to contend with, one who stood upon his own right, instead of those of another, and who would not, as these defendants, represent the original creditor, and be bound by every obligation which was imposed upon him.
The defendants say it might possibly be different if they were suitors to the court; but they are not; they ask nothing of this Court. In this they are mistaken; they are applicants for a favor, in the character of defendants. The law gives them nothing; their rights are not known at law. They would not be even heard to allege them. There, Helme is still the owner of the judgment. Here, the defendants are made parties by mere courtesy. The plaintiff might have left them to come into this Court as petitioners, asking to be permitted to use the name of Helme. They owe their existence as claimants to the principles of this Court, and *Page 95 
they ask to do, in the name of their assignor, what it would be the height of inequity to permit him to do, because they say that the latter sold to them. But Helme had nothing that he could sell. I think, therefore, that the injunction should be perpetuated. I have viewed the case as if Helme intended no actual fraud when he assigned to the defendants. He says so, and there is nothing to induce a belief that he did. But the fact is that he was then insolvent, and therefore could pass nothing in the judgment, as against the plaintiff.